Good morning. May it please the Court. Ben Nissenbaum for the plaintiffs and the appellants. Nam Han, David Han, and on behalf of the estate of Joseph Han. I'd like to reserve five minutes, if I could, for rebuttal. The District Court's grant of summary judgment in favor of the defendants in this case should be overturned. And it should be overturned because the plaintiffs can prove a set of facts which demonstrate, under clearly established law, that it was unreasonable for the defendants, for Barber and Peterson, to shoot the decedent, Joseph Han, and that they completely disregarded the only reason that they were there, which was Joseph Han's obvious psychiatric emergency. The defendants violated standard police training and were unreasonable. And, really, when you look at what was going on in this case, the Han family, there's only one reason that they called the police, and that really was to get a 51-50 for their sick son. Their son hadn't threatened anyone. Their son hadn't tried to hurt anyone. He was having what frankly appeared to be a mental breakdown. He hadn't eaten for two days, but there's no indication that he was suicidal. They had some concerns about calling the police, and those concerns were actually what ultimately transpired, and that is that the police would overreact to Joseph Han, that they would not understand or heed their warnings and turn this into a confrontation, turn this into a situation where they shot and killed him. But it's not simply that they mishandled the case. More directly, even when you get to the moment of the shooting, this shooting, both by Barber, by Officer Barber, and by Officer Peterson, was unreasonable even at that moment, even at those moments. Doesn't your expert contradict that? No, he does not. I think that's a misplacement by Mr. Prate, and that really is Lou Ryder, our expert, responding to his hypotheticals out of context. But what was out of context about that hypothetical? Well, the question here is whether or not the person, well, first, the whole circumstance of whether or not retreat is feasible. Obviously, retreat is feasible throughout this entire time. Once Barber goes in, let's deal with Officer Barber first. And it's critical here, I think, to understand the totality of the circumstances, which are that the house is essentially secure. There is nobody else in danger. The only person in the house, apart from David Hahn at this point, to the officer's knowledge, is Joseph Hahn and the officers. So Barber, when it becomes clear that Joseph Hahn is not complying with their orders, Barber steps into the room, takes two steps into the room, and then ultimately shoots Joseph Hahn. And at that time, there's evidence, very clear evidence. Well, that's skipping a few steps, right? In other words, we've got the taser. He testifies. He warns him to drop the knife. Of course. It's not like he's there and he steps in and he shoots him. No, no. So I guess you, as I understood your brief, this intermediate taser step, you do not challenge as unreasonable, correct? Not at all. Not at all. So he does that. That doesn't work. He testifies that he has this knife and he says various things. And it's only after that that he shoots, correct? It's after that that he shoots. I noticed the court make a motion, kind of like a jabbing motion. Well, that's what one officer says. Another officer says that did not happen. And he also says that Mr. Hahn doesn't take any steps towards Officer Barber, right? So, okay, after the taser fails, that's when Officer Barber steps into the room, quote, in order to get a better shot on him. And that's not taken out of context, and he's not talking about to get a better taser shot at him. He says it in two different locations in his initial statement. He backs off it in his deposition, of course. But there's at least a question of fact on that, whether it's material or not, is the issue, right? Well, exactly. But the issue, the point here, it must be material because what is he doing? At the end of the day, if a person has a knife and you're going to put yourself in front of that knife, at that point in time it is the officer creating this situation. It is the officer then shooting his way out of it. But the real critical point is that even at the moment that he shoots, Officer Barber has the ability to step back out of the room. And that is an alternative that should have been considered and clearly was not considered. One moment. Thank you. Mr. Nissenbaum, isn't your theory, and I don't want to mischaracterize it, that at some point the officer should have retreated and perhaps treated Joseph Hahn as kind of a barricaded individual? Absolutely. They should have retreated. At what point should they have retreated in your view? I think at the point when it became clear that the initial tase did not work, that he was not complying with them, the initial tase was not effective for whatever reason. They could have done several things there. They could have retreated. They could have ordered that another tase be used in case it was because the initial tase, one bar missed him perhaps. Joseph Hahn wasn't coming out towards them. He wasn't actively attacking them at that point. That was not happening. But you would agree that just because there are other reasonable alternatives, that doesn't make what the officers did unreasonable or excessive. Isn't that the law of the Ninth Circuit? Just because there are other alternatives. The law of the Ninth Circuit is that alternatives should be considered, and it can make the availability, certainly if you look at Glenn, if you look at De Orley, the availability of other alternatives, even if you look at Smith,  And when you come down to it, one point that I want to make clear here, I'm not saying that there should be two separate tracks, but as in De Orley, and this is where I think the district court kind of went sideways here, is that you don't take the mental disability and hold it against that person and say that that raises the government's interest in using force. It's just the opposite. Under De Orley, the government interest in using force against a person who is mentally diminished or mentally impaired is diminished. It reduces the interest in using force. The question here, if Mr. Hahn is threatening and charges at them, that's one thing. But that didn't happen. And I think that that is kind of the crux of the case. This was a shooting that was caused at the end of the day by an officer essentially charging into his room. Granted, he tried the taser, and that was a good thing to do, and that should have been done, and it should have been continued to be used. They had the ability to redeploy and reuse it. The question here, they're called to help this person. Well, he was tased more than once. As a matter of fact, wasn't he tased three times? Right, and it ultimately put, well, initially he was, the taser missed, and then there was a shot. And then there were more tasings that occurred after that. And then we get to the Peterson shooting, and that's a situation where, according to Officer Peterson, the taser is effective. According to Barbara, the taser is effective. And Mr. Hahn is still holding the knife. And at the end of the day, he gets up holding the knife. Officer Prochu could have tased him again. He did not. I'm not saying that there's liability against Officer Prochu in this case. I'm not saying that. But with respect to Officer Peterson, Peterson's testimony is that Hahn is moving in slow motion. This is not a person who's charging at them. So you have time. Time is a consideration. You look at Glenn. You look at Dior-Lee. You look at Smith. Availability of alternative methods of capturing or subduing a suspect. You look at Glenn. The tactics of persuasion or questioning. Using time as a tool. The fact that he is armed is one thing. But if that were, as has been stated, I believe, in Blanford, if that were the only consideration, then, of course, you would never even get past that point. But the question is. Aren't your claims only really against Barbara and Peterson? Yes. So you've named Prosue. He should be dismissed. Do you agree with that? I do agree with that. And the city of Monell, the Monell liability claims, there doesn't seem to be much argument about that. I'm not. You started off by saying it was against their training, which seems to me to concede the training policy custom issue. I did say that. I actually misspoke because they don't appear to have been trained very well on this point. They appear to have no training, actually. In fact, if you listen to what Barbara says, Barbara says that his training is that mental impairment is not a consideration whatsoever, period, except that maybe they might be more hostile to you because they're mentally impaired. So he actually flips it. And that's troubling. That does demonstrate an issue with their training. But at the end of it, ultimately, similar to Glenn, very similar to Glenn, this is a case where the officers had the opportunity to retreat. Instead, they did not. But even at the moment of the shooting, if you accept Prosue's testimony, and there's no reason not to. The district court rejected it, saying that, well, close reading is that he didn't see it. Doesn't mean that didn't happen. But isn't that for a jury to find? Those are jury questions in terms of the credibility. Prosue is very clear about what he sees in his statement to investigators. He's very clear about what he sees, and that Mr. Hong never approached the officer and never jabbed the knife out at Officer Barber, that that did not happen. It just didn't happen. If you accept Prosue has to say. So I think a jury can accept that. And if a jury accepts that, then this was an unreasonable shooting, even ignoring the mental instability factor, even ignoring all the rest of it. It is an unreasonable shooting at that moment by Officer Barber. The analogy is this. If you have a car that's moving slowly at you, does an officer have a right, when it's available, and the officer has the availability to step out of the way of this slow-moving car, does he have a right to shoot and kill the driver who's driving slowly at him? And the answer is no, not when it is reasonable for him to step out of the way. In this case, what we know after the first shooting is that Mr. Hong closed the door on them. So that indicates that he's not trying to attack them, which goes then to Peterson's shooting, and it goes to the basis of the reentry. Just to interrupt one point there, what's often raised in those situations is if you have somebody called in on a possible mental health hold, that the concern is not just for the officers but for himself, if he then goes in the room with the knife. Where does that factor in, if at all, in this situation? It factors in two ways. The first is that when they first, when, according to Officer Barber, when he first sees him, when he first sees Mr. Hong, Mr. Hong is in his bedroom. Mr. Hong doesn't get up and attack him. So they could observe him with the door open initially. That could happen. Now, after things happen and there's an initial shot and Mr. Hong slams the door closed, you have Officer Peterson kick the door open, but Mr. Hong isn't coming at him. Mr. Hong's not coming and charging back at him. That doesn't happen. Yet again, Officer Peterson goes in, tases him, and our fight here is not with the tasing, to be clear about it. It's about the shooting. It is around the shooting. So to not afford the opportunity to allow mental health to arrive when you can observe him with the door open, even after the first shot, reopen the door, redeploy, observe. Allow, at some point in time, it is reasonable to allow things to happen, and the officers did not do that. And I think, you know, I know counsel raised the Sanders case, Sanders v. City of Fresno, and that's totally in a posit in our view because obviously that's a taser case alone. It is not a shooting. And there was a danger. And interestingly enough, in that case, tasers were used, not guns. And yet there was a danger to innocent people there, innocent people present. That would kind of augur more towards our benefit. And I do want to get to the negligence issue if we have a moment. Well, you've got 30 seconds left of your time, so that's up to you. I would only say that Hayes is very clear that if you take the broad focus here that Hayes requires, that that claim was improperly dismissed, and that Munoz, Mr. Prate's case, is no longer the law. Thank you, counsel. Thank you. Good morning, Your Honors. Bruce Prate on behalf of the defendants. And to address the court's concerns, Mr. Nissenbaum just kind of put it in a nutshell when he said their fight is not about the tasing. In other words, the approach of the officers, I think everyone agrees, including their expert, that the approach was appropriate. And I think what the court needs to understand is this is not a situation where you open a bedroom door and there's Joseph Hahn. In fact, the record reflects the officer had to step into a little breezeway, turn the corner before he had any visual of Joseph Hahn sitting on the couch with the knife. And even their expert says stepping into the room to get that visual was appropriate. It's then that the officer tries to calm Joseph. This isn't a situation of Glenn v. Washington County, which I would agree with the Ninth Circuit and everyone else that that's an absurd set of facts for the officers to have jumped the gun, so to speak, and use foul language and agitate and escalate the situation. On the contrary, in this case, Officer Barber goes in using calming a voice, addresses Joseph by first name, exactly what should be done in this situation. Joseph then makes the threat. The officer, unlike ---- Excuse me. Yes, sir. I want to ask you about the threat because I think there's a material question of fact as to ---- excuse me. There's a question of fact as to whether that threat was made. Whether it's material or not, I'm not sure. You pass it off in your briefing as if it's cast in stone that that threat was made. But one of the officers didn't hear it or at least didn't testify in his deposition that he heard it. And the brother says it never happened. And you can infer from the record that he was in a position where he could have heard it. So would you agree that there's at least a fact dispute about whether Joseph said, get the fuck out of my room or I'm going to cut your throat and shove it down your neck? Well, I think ---- I'm not sure it's a ---- well, one, I don't think it's a material issue of fact because ----- There's a fact dispute first. There's a fact dispute only in the sense that the brother says he didn't hear it. He says it didn't happen. He didn't say it didn't happen. He says he didn't hear it. But a jury could find that it didn't happen. I suppose a jury could. I think that the officer, and I don't want to get into credibility issues, though, but Officer Barber in his long career says this is the first time he's ever felt he was really going to die. So whether Joseph made that threat or not, clearly the officer doesn't shoot him at that point. The officer instead does the tasing, the first tasing, which regrettably doesn't work for whatever reason. They've agreed that that's not an issue. Their expert agrees the tasing was appropriate. The officer still then, and there needs to be a correction, the Court may be misunderstanding, but certainly Mr. Nissenbaum said that there was one tasing and then the shot. Not true. The record reflects that the officer Barber attempted to tase Joseph. It didn't work. He called for Officer Prochu to fire a second tasing, which regrettably didn't work as well. Then, as he's backing out, and even David Hahn, and that's what's so unique about this case, we don't need the officer's testimony at all for probable issues of fact. David Hahn says it was Joseph who was advancing on the officer. Their own evidence shows that it was Joseph, not the officer, closing that gap. Well, that's the other part of it is that I think, didn't Peterson testify that he thought Joseph was standing still, although he didn't see all the encounter? See, the problem I have with this is that we have, it's a jumble of facts. And if I'm looking at it just as I would reading, you know, apart from the law, you can say, well, I think I can see that the officer might have justified, but we can't do that. We have to draw all the facts and inferences in favor of the plaintiff here. So if we say he was standing still, he didn't raise his knife, and that Barber actually stepped into the room to get a better shot, is what he says he did, why doesn't that raise a genuine issue of material fact if we're under those assumptions? Right. Because Barber does say, I stepped into the room to get a better shot. I'm not sure that he says to get a better shot, a better view, and we have to put it in terms of the timing of those statements as well. And it's, he does step into the room to get a better view because there's that little three-foot wall after you step into the room. He then gets a better view of Joseph. Joseph, according to David, and that's why this case is so ripe for summary judgment, is that it's David, their evidence. You don't have to buy the officer's statement or even create a trial issue fact. David says it's Joseph who's stepping toward the officer with the knife. But one of your witnesses says the opposite. The protrude you're talking about? Yeah. I don't think protrude's in a position to see, and again, it's a timing issue. And Joseph, I'm sorry, David himself says this is all happening very fast, which my point for the Court, too, is that this is that classic split-second decision. Unlike Glenn, unlike Diorrelli or however you say that case, where officers have all kinds of time. This is not analogous to the police officer with a slow-moving vehicle at him. This is in a confined 10-foot-by-10-foot bedroom where an officer's confronted with an armed suspect with a knife. The officer tries to back out, has nowhere to go. Tasing doesn't work. Instead of shooting, he calls for a second tasing. These are all undisputed facts. He's got his hand on the gun, doesn't he? He's drawing his gun, and then he's telling the other officer to tase. Isn't that right? Right. Yeah. And that's exactly, even their expert says, even when you have a taser out, you provide lethal cover as a backup. And he's backing out, and even David Hahn, again, not my officers, David Hahn says that Joseph gets within arm's length, very close to the officer. At that point, the officer's either going to get stabbed or he fires. And that's when there's some confusion, admittedly, because Sergeant Peterson hears a gunshot, doesn't see his officer go past him, and he believes he has an officer in there who's in need of assistance. Plus, he believes and he knows he's got a wounded suspect. They can't just let the door close and, well, let's just leave him in there to bleed to death. Even if his officer is not in there, which he's not, he kicks the door for the benefit of Joseph Hahn. He goes in. This time, Prochu is able to tase Joseph, and it works. Sergeant Peterson then goes in to secure Joseph, who has been wounded, and there's that five-second taser cycle, and that is completed. At that point, Joseph comes out of this tasing and starts to get aggressive again. Prochu cannot tase Joseph again with another cycle because the wires are across his sergeant's back, although some officers might have preferred to tase their sergeant, but he didn't. And at that point, Sergeant Peterson steps back and intentionally doesn't try to kill Joseph. He fires a round intentionally into his hip. The issue here is the shootings. Their expert agrees both discharges of weapons were reasonable under the totality of the circumstances, and not only this court, but their expert among everybody is going to view it most favorably to the plaintiff. And I think that's why the district court got it correct under the facts, viewed most favorably to plaintiff, and that's David's testimony. So in your view, you don't need Officer Barber saying what Hahn said to him? I think it certainly helps our case, but I don't think it's necessary because their expert and the district court say it's still reasonable. Their expert doesn't buy that Joseph makes that verbal threat. He says David never heard it. Okay, take that out of the equation. Their expert still says it's a reasonable use of deadly force by Officer Barber in the first instance and Sergeant Peterson in the second instance. That's an interesting question about materiality of facts when you have a situation where somebody testifies such and such happened. He said this to me. And then you don't have the other witness who said, no, he said something different. You just have, I didn't hear. Do you have any authority for how do we treat that in evaluating whether if somebody didn't hear something there's an inference that it might not have been said? Do you understand the dilemma? I understand the issue. I'm not sure it's a material issue because everybody agrees that Joseph is still advancing on the officer with a knife. Whether he's making these threats or not, certainly a reasonable police officer would perceive that in a tense situation as a threat. Certainly the threat helps the defense, but I don't think it's material to making the decision. And I guess we are before the Ninth Circuit. Maybe we need a case that says if you have a witness that says this happened, and no one contradicts that, but just no one else heard it, is it then appropriate to rely on that uncontradicted statement from the officer? And I think that's where the Court is looking. And I would certainly submit that absent evidence to the contrary or conflicting testimony that the district court could then rely on the uncontested, albeit uncorroborated, evidence. Well, if that's the case, that's probably true. But he basically says he didn't hear. The brother says he didn't hear it. Right. And the inference is it wasn't said because he was in a position to hear it. So it's … And I would agree. If the brother had said he never said that, and I heard him say something contrary, we have a material issue of fact. Well, we have an issue of fact, whether it's material or not. I'm not sure. So in other words, he could say he didn't say. In other words, you're distinguishing between he didn't say that versus I didn't hear him say that. Right. And I think that that becomes an immaterial issue. And, in fact, the district courts should be instructed to say if there's no contradictory evidence and it's simply a lack of corroboration, then the district court can rely on it as an uncontested fact. The other issue is the Hayes case, which, you know, certainly this Court asked the California Supreme Court for guidance on that. And the California Supreme Court has said that pre-shooting tactics are one factor to be considered, not in isolation, but as the totality of the circumstances. Okay. We're bound by that. The totality of the circumstances, however, still show, and they agree, we're not talking about the tasing, the pre-shooting conduct. We're going to the totality of the circumstances that leads to the shooting, which is the only issue in this case, be it from their expert. And these officers and their approach, this isn't like Glenn, this isn't like D. or Ali. This is a situation where these officers tried to leave. Said, look, we've got nothing here to take your son for mental observation. The family begged them to go into the house. The officers accommodated that. They go in, and Joseph, one, has locked the door from the inside, which counsel said there's no one else in danger. Well, I beg to differ. When the officers are told, please go in our house, the officers are in danger. They're facing a potential ambush situation. Officer Barber even says he's not in here when he first opens the door, which heightens their concern. He then steps in to get a better look. There's Joseph with the knife. So the officers are in danger. There were no other people in the house. But if the officers left, now the Hahn family is back in their original dilemma. What do we do? No one will help us. Please, officers, help us. The officers try to help. And, in fact, they're confronted with an armed suspect who advances. They try desperately alternatives. The Ninth Circuit has said in Scott v. Henrich, they don't have to consider alternative the least intrusive. Yet they did. They tried calming. They tried tasing twice. They had to fire one shot. Then they still tried to tase him. Still didn't work. Then the Sergeant Peterson didn't try to kill him. He, in fact, clearly aimed to the hip so as to not kill him. And we don't know which gunshot wound caused the death. It's probably impossible to tell. I don't. I'm not sure it's material to this situation here. It may be if you segregate liability. I suppose. But I'll submit they're both deadly force. If you're justified in using deadly force, whether you cause the death or not, it's still a use of deadly force. Unless the Court has anything else? I do. I'm having a difficulty understanding the plaintiff's theory. So let me propose what I think the plaintiff's theory might be. And that is, at the time they first encountered Joseph in the room and they announced why they were there, and Joseph had the knife and was holding it and was probably seated, as I understand, at that point. But that's probably a fair dispute. When it was clear he wasn't going to drop the knife and when he asked them to leave the home, what would have happened had they backed out at that point, treated it as a barricaded individual with mental problems, brought in a better-trained team that probably could have used a flash bomb or some other devices? I know this is all second-guessing after the fact. I get that. But is that the plaintiff's theory? That that was the point where they should have retreated? Because once you get into very close range and they're tasing him and he's moving forward, I think the shooting was probably justified at that point. So it must be earlier, if it was unjustified, that they shouldn't have put themselves in the situation where they were in that close range. Is that the plaintiff's theory as you understand it? I can't speak for Mr. Mitzenbaum, but certainly they could have ignored the family's request and left him and said, you know what? He doesn't want to talk to us. We're going to leave. But they didn't do that. They said, we're going to try to help. The family has asked us to talk to Joseph, which is exactly what Officer Barber did. He didn't say, drop the gun or drop the knife. He instead said, Joseph, buddy, put the knife down. We're here to help. Exactly what the family asked. Could they have retreated? Sure. And then had a barricaded situation, which is going to require many more resources, also left the family in the same situation, and ultimately may be a result in Joseph's own suicide. Who knows? But we're well beyond speculating what could have, should have, would have happened. This is what did happen, and I don't think there's a material issue of fact. The district court got it right. Their expert got it right. All applications of force were objectively reasonable. The knife that was used has been described as a pocket knife or a camping knife. Do we know? A printing knife. So it was a fair size. Yeah. Okay. Thank you, Your Honor. Rebuttal will give you two minutes. So to be clear, the theory is this. Yes, they should have redeployed. Once they realize that he's not responsive to them, once they realize that he does have a knife and they have confirmed, essentially, that the house is empty except for him in his room, they should have redeployed, called in services, as you indicated, treated as a barricaded suspect. You have any number of options. Make time your ally, and that is what they're trained to do in this situation. There was no emergency dictating otherwise. And haven't they been told by the family outside that he was claiming he was God? Yes. They knew he was delusional. They knew it, and then they confirmed it for themselves. And the indication when they saw him, certainly when Barbara saw him, is that Joseph had this look in his eyes that was clearly a look that was not that he was irrational. So, yes, that is the theory. So at precisely what point do they go constitutionally wrong, in your view? So they go constitutionally wrong when, instead of backing out and treating it as a, as what it was. Before the taser? I think, I skip over the taser. No, no, no. Don't skip. Yes, yes, before the taser. Before the taser. Be clear about it. Before the taser. So they show up. They say, oh, we can't help this guy. Goodbye. That should have been what they were required to do. No. In between the two extremes of what they did in this case, and the total extreme of total abandonment, lies reasonable conduct. And the reasonable conduct here is to back out, set a perimeter, set a perimeter, call in people who are more skilled and more trained than they are, because as we know, they have no training. I think Officer Peterson, Sergeant Peterson, he was trained in 1984 through Post Academy and has had no training with respect to dealing with mentally impaired people since then. And that is a problem. And that's part of why this happens. At the end of the day, I do disagree, though, that when Joseph Hahn does ultimately, when the taser doesn't work, when Officer Barber steps into the room, he does say in two different locations. I can read it for you. I can cite to it. Either way, it's in the record. They are in his interview. They are two pages apart. I think it's page 39 and 41 of his interview. In two separate locations, he very clearly says, the taser didn't work, so I stepped into the room to get a better shot at him using my firearm. That is exactly what he says. He doesn't say, but using my firearm is what he's referring to. That is clear in each section that he says it. So I think that is likewise where this goes awry, secondarily, or subsequently, rather. It goes awry initially when they should have backed out, treated it as a barricaded subject and a mentally infirm subject, a person of diminished capacity. And then it goes awry when the officer does the other extreme from that, which is, well, I guess I'm going to have to shoot him, because when he's saying to get a better shot on him, what else is he saying? And why would you approach someone with a knife in this situation? And that's why, although it is true that retreat is only one factor, retreat here is the reasonable factor. It is the reasonable thing to do. Of course, if you put yourself right next to a knife, then the person can stab you. And at that point, maybe you do have a right to shoot him if you put yourself right next to that knife, but why would you do that? And it was unreasonable to do, and it was unconstitutional to do under these circumstances. Really, if you look at it, this is a seizure that they were trying to effect from the moment the officer initially stepped into the room. Thank you, counsel. Thank you. The case just heard argued to be submitted for decision, and we will be in recess.
judges: Bennett, Thomas, McKeown